## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL EVANS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 04 C 3570** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **CITY OF CHICAGO, Present and Former** | ) | |
| **Chicago Police Officers ANTHONY** | ) | |
| **KATALINIC, FRED HILL, WILLIAM** | ) | |
| **MOSHER, JOHN McCABE, THOMAS** | ) | |
| **McKENNA, DENNIS BANAHAN, JOSEPH** | ) | |
| **DiLEONARDI, JOHN GRIFFITH,** | ) | |
| **RICHARD O'CONNELL, PAUL NEALIS,** | ) | |
| **PETER DIGNAN, THOMAS FERRY,** | ) | |
| **PATRICK McGROARTY, JOSEPH** | ) | |
| **DiGIACOMO, ROY MARTIN, EDWARD** | ) | |
| **LERACZ, DANIEL SWICK, and JOHN** | ) | |
| **RYAN** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Evans ("Evans") filed this fourteen-count amended complaint alleging various federal and state law claims against the City of Chicago and eighteen current and former members of the Chicago Police Department (collectively, "Defendants"). Presently before this Court are Defendants' motions to dismiss. For the reasons stated below, Defendants' motions are granted in part and denied in part.

## I.    BACKGROUND

At this stage of the proceedings, all well-pled facts are taken as true. On January 14, 1976, a nine-year-old girl named Lisa Cabassa disappeared while walking in her neighborhood on Chicago's southeast side. Her body was found later that night in an alley several miles away from where she had been last seen. She had been raped and murdered.

At the time, Plaintiff Michael Evans was a seventeen-year-old high school student at Bowen High School in Chicago, with no criminal record or any prior involvement with the criminal justice system. He lived with his parents and siblings and spent his free time playing the clarinet. He also played baseball and basketball.

The Chicago Police Department ("CPD") investigation of the Cabassa murder was led by Defendant DiLeonardi, a Chicago Police Commander, and Defendant Griffith, a Chicago Police Lieutenant and the commanding officer of the Chicago Police Area 2 Homicide/Sex Unit ("Area 2"). Defendants O'Connell, Ferry, and McGroarty were Chicago Police Sergeants assigned to Area 2, under the direct supervision and command of Defendants DiLeonardi and Griffith. Defendants Katalanic, Hill, McCabe, Mosher, McKenna, Dignan, DiGiacomo, Banahan, Nealis, Leracz, Martin, Swick, and Ryan were duly appointed Chicago Police Detectives assigned to Area 2, under the the direct supervision of the Defendant Chicago Police Sergeants.

According to Evans' amended complaint, rather than conduct the necessary police work to solve the Cabassa murder, Defendants conspired among themselves and with others to make it appear that Evans and another man, Paul Terry, were guilty of the crime. To this end, Evans contends that Defendants stretched and manipulated facts and evidence to fit the "false hypothesis" that Evans and Terry committed the murder. Defendants manufactured "evidence"

and unlawfully manipulated and coerced witnesses to falsely implicate Evans. Specifically, the unlawful witness manipulation included coercing false, incriminating statements from Sam Parker, Keith Jones, Columbus Thomas, and Judith Januszewski through threats of physical violence, actual physical violence, improper psychological intimidation and pressure, and unduly oppressive confinement conditions. The resulting statements were neither true nor the product of the witnesses' free will. Defendants coerced a false and incriminating statement from Evans through these same means. In addition, Defendants denied Evans access to his mother and to an attorney during his interrogation even though Evans was a juvenile at the time.

Defendants detained witness Januszewski in the police station until late in the night against her will. They did not release her until her husband arrived at the station and demanded her release. Defendants repeatedly visited Januszewski and pressured her to change material details from her initial description of the night of the murder, including the time she allegedly left her workplace, so as to implicate Evans falsely. Januszewski changed her statement and implicated Evans, whom she had known for over a year, after more than forty days of persistent and improper pressure by Defendants.

In addition, Evans alleges that Defendant Officers disregarded or destroyed exculpatory evidence including police reports, notes, and statements that should have been preserved with CPD files, but were not. Evans contends that Defendant Officers deliberately failed to investigate and follow up on information that would have established the guilt of other individuals. In so doing, Defendants unlawfully suppressed information that would have implicated other individuals and exonerated Evans. Moreover, Defendants created sworn police reports that contained materially false "evidence," including statements attributed to witnesses

who in fact never made those statements, and used these reports to unlawfully detain and prosecute Evans. The Defendant Police Officers withheld exculpatory and material evidence from Evans and in some instances, from the prosecutors as well. Specifically, Defendants withheld information about the existence of exculpatory information concerning Januszewski and other witnesses that would have tended to exonerate Plaintiff.

According to Evans, the Chicago Police Department maintained a policy and practice of systematically suppressing exculpatory information and material evidence by intentionally secreting discoverable information in so-called "street files." These files were routinely withheld from the State's Attorney's Office and from criminal defendants, and were subsequently destroyed. Consistent with this policy and practice, Evans contends that Defendants concealed exculpatory evidence within the street files which was never disclosed to his defense attorneys and since have destroyed the files. This evidence would have exonerated Evans. Moreoever, Evans contends that this policy and practice was "consciously approved at the highest policy-making level for decisions involving the police department." (Pl.'s Am. Compl. ¶ 46).

According to the complaint, Defendants manipulated a line-up identification of Mr. Terry in order to imply that he was Plaintiff's co-conspirator in the Cabassa murder. Defendants then withheld information about the manipulated line-up identification from Plaintiff's defense counsel.

In May and June of 1976, Evans was put on trial for the kidnapping, rape, and murder of Lisa Cabassa. He was convicted. Shortly therafter, the Illinois trial court learned that the State improperly had failed to disclose to Evans' defense team that financial assistance had been provided to Januszewski, the key prosecution witness; the trial court accordingly granted Evans'

motion for a new trial. In April 1977, therefore, Evans was retried for the Cabassa crime along with his new co-defendant, Paul Terry, whom Defendants had wrongfully implicated as Evans' co-conspirator. Evans and Terry were found guilty at this second trial. The trial court sentenced them to terms of 200 to 400 years' imprisonment. As a result of Defendant Police Officers' unlawful conduct, Evans alleges that he suffered emotional pain and suffering. He was placed in the Illinois prison system where he faced the stigma of having been convicted for raping and murdering a child. He was shunned, and worse, by the inmate population. Consequently, Evans asserts that he has suffered "almost unfathomable damages." (Pl.'s Am. Compl. ¶ 42).

Plaintiff's Exoneration

Shortly after Lisa Cabassa's body was discovered, swabs were used to take DNA samples from her vagina and rectum. The rectal swab revealed the presence of semen but DNA testing technology was not sufficiently developed to enable investigators to identify the person or persons responsible for its presence in the victim. The swabs, however, were preserved. Over two decades later, when more sophisticated DNA testing technology became available, Evans petitioned under Illinois law to conduct DNA testing at his own expense. In July 2002, the Illinois courts approved his petition. Orchid Cellmark laboratory, formerly known as Cellmark Diagnostics, tested the DNA samples and established conclusively that neither Evans nor Terry were the source of the semen found in the victim's body. This result was later confirmed by a second lab, Bode Technology Group. The DNA testing results directly contradicted the theory under which Evans and Terry had been convicted.

Based on the DNA testing results, Evans and Terry filed petitions for relief from their convictions. The State did not oppose their petitions. On May 23, 2003, Judge Dennis J. Porter

vacated Evans' conviction and released him and Terry immediately. The Cook County State's Attorney, Richard A. Devine, proceeded to dismiss all charges against Evans on August 22, 2003. Devine explained his decision in a letter to the *Chicago Tribune*, stating that Evans and Terry had been "wrongly incarcerated for 27 years." (Pl.'s Am. Compl. ¶ 34).

Chicago Police Department Practices and Procedures

According to the complaint, a group of Chicago Police Officers in Area 2, including some or all of Defendant Police Officers, "engaged in a systematic pattern of coercion, fabrication of evidence, withholding of exculpatory information, and other illegal tactics, the sum total of which completely corrupted the investigative process." (Pl.'s Am. Compl. ¶ 48). Specifically, there was an institutional desire to "solve" crimes expediently, without regard to actual guilt or innocence, in order to enhance individual officers' personal standing in the Department. This desire was known to command personnel, including supervisory Defendants in this case, who also participated in the practice. Evans further contends that municipal policymakers exhibited deliberate indifference to this departmental policy and practice. As a result of the Area 2 abuses, at least thirteen criminal defendants were wrongfully sentenced to death. Evans avers that these widespread abuses occurred because the City failed to implement sufficient training of its police officers and declined to implement a legitimate oversight or disciplinary mechanism. Instead, according to Evans, the Department's investigative and disciplinary system was, and is, for all practical purposes, nonexistent. (Pl.'s Am. Compl. ¶ 51-52). Evans alleges that as a result of the investigative abuses and improper coercion, manipulation, and physical abuse by the Defendant Police Officers, he suffered mental anguish and emotional distress.

<u>Instant Claims</u>

Evans brought this fourteen-count amended complaint against the City of Chicago and the following present and former Chicago Police Officers in their individual capacities: Commander Joseph DiLeonardi; Lieutenant John Griffith; Sergeant Thomas Ferry; Sergeant Richard O'Connell; Sergeant Patrick McGroaty; Detective Anthony Katalanic; Detective Fred Hill; Detective John McCabe; Detective William Mosher; Detective Thomas McKenna; Detective Peter Dignan; Detective Joseph DiGiacomo; Detective Dennis Banahan; Detective Paul Nealis; Detective Edward Leracz; Detective Roy Martin; Detective Daniel Swick; and Detective John Ryan. Counts I-V and VII-IX are brought pursuant to 42 U.S.C. § 1983. Count I alleges Defendants withheld exculpatory evidence, fabricated inculpatory evidence, and misdirected and misled the criminal prosecutors, resulting in Plaintiff's unjust criminal conviction. Evans alleges that the Defendant Police Officers' misconduct denied him his constitutional right to a fair trial and a fair appeal, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. In addition, Evans contends that this misconduct was intentionally undertaken pursuant to the policy and practice of the Chicago Police Department with willful indifference to his constitutional rights, and was objectively unreasonable. In Count II, Evans asserts that all of the Defendants, while acting individually, jointly, and in conspiracy, under color of law and within the scope of their employment, caused Plaintiff to be falsely imprisoned in violation of his constitutional rights. Count III alleges that one or more of the Defendants used unjustified violence against Evans to coerce him to confess to a crime he did not commit. In Count IV, Evans avers that Defendants denied him his right to counsel in violation of the Sixth Amendment to the U.S. Constitution. Count V alleges that

Defendants denied Evans equal protection of the law in violation of his constitutional rights. Specifically, Defendants actively participated in or personally caused misconduct in terms of abusing minority criminal suspects to coerce confessions and obtain unjust convictions. Evans contends that this misconduct was "motivated by racial animus and constituted purposeful discrimination." In addition, it affected minorities in a "grossly disproportionate manner vis-a-vis similarly-situated Caucasian individuals." (Pl.'s Am. Compl. ¶ 78). In Count VII, Evans asserts that Defendants agreed among themselves to frame him for the Cabassa murder, thereby depriving him of his constitutional rights. Specifically, before and after Evans' convictions, each of the Defendants further conspired to deprive Plaintiff of exculpatory materials to which he was lawfully entitled and which would have led to his more timely exoneration. As a result, Evans' rights were violated and he suffered financial damages and severe emotional distress and anguish. Count VIII alleges that Defendants acted to deny Evans the right of access to the courts by wrongfully suppressing and destroying information and evidence, which deprived Evans of constitutional claims against potential defendants. In addition, Evans asserts that Defendants' actions diminished his ability over the passage of years and accompanying erosion of evidence to prove his claims against those potential defendants. In Count IX, Evans contends that during the constitutional violations previously alleged, one or more of the Defendants and others as-yet unknown, failed to intervene to prevent the abuses and violations of his constitutional rights to which Evans was subjected by the Defendants.

Count VI alleges that Defendants conspired, directly or indirectly, for the purpose of depriving Evans of equal protection of the law in violation of 42 U.S.C. § 1985(3).

Evans' complaint also alleges state law claims of malicious prosecution in Count X, civil conspiracy in Count XI, intentional infliction of emotional distress in Count XII, respondeat superior in Count XIII, and indemnification in Count XIV.

Defendant City of Chicago, pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(e), and 12(f), has moved to dismiss Counts III, IV, VI, VII, and VIII of Plaintiff's amended complaint. Defendant Police Officers have moved pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f) to dismiss Counts I, III, IV, VI, VII, VIII, and IX of Evans' amended complaint.

## II.     STANDARD OF REVIEW

For the purposes of a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997). Thus, the court will dismiss a complaint under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Ledford v. Sullivan*, 105 F.3d 354, 357 (7th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984)). Any ambiguities are construed in favor of the plaintiff. *Curtis v. Bembenek*, 48 F.3d 281, 283 (7th Cir. 1995). The liberal notice pleading standard of federal practice applies to civil rights claims brought under 42 U.S.C. § 1983. *Leatherman v. Tarrant County Narcotics Intell. & Coord. Unit*, 507 U.S. 163, 164-69 (1993). However, the court need "not strain to find inferences favorable to the plaintiffs which are not apparent on the face of th[e] . . . complaint." *Coates v. Illinois State Bd. of Ed.*, 559 F.2d 445, 447 (7th Cir. 1977).

## III.    ANALYSIS

### A.    Statute of Limitations

Defendants claim that several of Evans' claims are barred by the applicable statute of limitations. At the outset, this Court notes that the Seventh Circuit has stated that the statute of limitations is an affirmative defense that a plaintiff need not anticipate or attempt to address in a complaint. *U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003); *see also Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030(7th Cir. 2004) ("[B]ecause the period of limiations is an affirmative defense it is rarely a good reason to dismiss under Rule 12(b)(6)."). When, however, a plaintiff admits that the applicable limitations period has expired, then the statute of limitations issue may be resolved on its face. *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004). But generally, "[u]nless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development." *Foss v. Bear, Stearns & Co., Inc.*, 394 F.3d 540, 542 (7th Cir. 2005).

### 1.    Section 1983 Claims

The appropriate statute of limitations for a § 1983 claim is the limitations period for personal injury claims in the state where the alleged constitutional violation occurred. *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985); *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998). The alleged violations in this case all occurred in Illinois, which has a two year statute of limitations for personal injury claims.[1] *Id.*; *see also Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir. 1996). Federal law, however, determines when a § 1983 action accrues. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992).

---

[1] At the time of the alleged violations, the statute of limitations was five years.

Under the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), if a judgment for plaintiff on his § 1983 claims "would necessarily imply the invalidity of his conviction or sentence," the statute of limitations does not begin to run until that conviction or sentence has been terminated in plaintiff's favor. *Heck*, 512 U.S. at 486-87. Thus, if a § 1983 claimant wishes to toll the statute of limitations, he or she first "must prove that the conviction or sentence has been has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* A damages claim that necessarily demonstrates the invalidity of a conviction may not be brought while the conviction stands. *Gonzalez v. Entress*, 133 F.3d 551, 553 (7th Cir. 1998). The Seventh Circuit further has stated that "a claim based on wrongful conviction and imprisonment d[oes] not accrue until the pardon." *Newsome v. McCabe*, 256 F.3d 747, 749 (7th Cir. 2001) (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)).

a.      **Coerced Confession**

Defendant Police Officers contend that Evans' coerced confession claim (Count III) accrued when the alleged misconduct occurred, that is, in 1976. Both Defendant Police Officers and Defendant City of Chicago note that Plaintiff fails to plead with specificity as to the date the alleged conduct occurred. Given the other facts provided in the complaint, however, this Court finds that the misconduct occurred between the date of the crime, January 14, 1976, and the commencement of the first trial in May 1976. Defendants assert that because the misconduct occurred in 1976, the statute of limitations likewise began to run in 1976 because Plaintiff knew or had reason to know that he had been coerced into confessing. Under that reasoning, the statute

would have run no later than 1981. In addition, Defendants contend that Plaintiff fails to plead any set of facts that would toll the statute or postpone the accrual of his § 1983 action, because a coerced confession would not necessarily demonstrate the invalidity of the confession as required by *Heck*. Specifically, Defendant City of Chicago alleges that claims based on coercive interrogation and related conduct are actionable immediately because success on such claims is not incompatible with a subsequent conviction.

Plaintiff contends that his claim is not premised on the alleged misconduct itself, but rather on the inducement that misconduct provided to prosecutors to initiate a wrongful prosecution. Evans argues that success on his coerced confession claim depends on whether he can establish that Defendants induced prosecutors to commence a wrongful prosecution and further, induced a wrongful conviction. Like the claims in *Heck*, these claims tend to imply the invalidity of Evans' conviction and could not have been brought prior to the May 23, 2003 vacation of his conviction.

The question for this Court is whether a favorable judgment for Evans on his coerced confession claim would necessarily imply the invalidity of his conviction or sentence. It is not entirely clear from Plaintiff's complaint whether the coercion yielded a confession rather than simply a coerced incriminating statement. This Court need not determine whether the statement constituted a confession because other factors doom Plaintiff's § 1983 coerced confession claim. Because the harmless error doctrine applies to coerced confessions, a judgment in favor of Evans on his § 1983 claim would not necessarily imply the invalidity of his conviction. *See Arizona v. Fulminante*, 499 U.S. 279, 310-11 (1991). Thus, Evans could have brought his coerced confession claim as soon as the claim accrued. The parties agree that the misconduct occurred in

1976 and that the statute of limitations would have begun to run at that time unless *Heck* applied. Because *Heck* does not apply, this claim is time-barred. Count III is hereby dismissed.

**b.    Denial of Right to Counsel**

Defendants argue that Plaintiff's § 1983 claim (Count IV) for deprivation of his Sixth Amendment right to counsel during his interrogation should be denied. They contend that Plaintiff provides no facts to support his claim, such as the date of the alleged denial of counsel, the manner in which counsel was denied, or who was involved. Moreover, Defendants assert that Plaintiff fails to provide the consequences of the alleged denial of the right to counsel on any statements or actions that harmed Plaintiff. Defendants argue that Plaintiff's amended complaint fails to allege a causal connection between their alleged conduct and the resulting injury. Finally, Defendants note that Plaintiff described this claim as based on the Sixth Amendment in his amended complaint. Defendants aver that the Sixth Amendment does not apply to station house interrogations such as this. Plaintiff responds, in a footnote in his response brief to the City of Chicago's motion, that "[i]nasmuch as adversary proceedings had not been instituted against Mr. Evans at the time of the interrogation, Count IV should refer to the Fifth Amendment, not the Sixth." (Pl.'s Am. Compl. at 10, n.1). Defendants contend that by conceding that the Sixth Amendment cannot serve as the basis for asserting a denial of right to counsel, Plaintiff has pled himself out of court.

Plaintiff again contends that his claim is based on a theory that certain Defendant Police Officers claimed to have secured a confession from him following an illegal interrogation; that the confession, but not the illegal means used to procure it, was documented in one of the official case reports; that this false police report then persuaded prosecutors to charge Evans, which they

-14-

otherwise would not have had sufficient evidence to do; and that this prosecution, once commenced, was bound to continue despite the fact that the so-called confession was later found inadmissible. Evans avers that Defendants' misconduct in reporting his confession, without disclosing that it was coerced, constitutes an independent constitutional violation.

Evans fails to show, however, that Defendants' conduct violated his Sixth Amendment right to counsel. In fact, Evans' amended complaint fails to plead facts to show that he had a Sixth Amendment right to counsel for conduct asserted. The United States Supreme Court has held that the Sixth Amendment right to counsel only attaches once the initiation of adversarial criminal proceedings. *See Moran v. Burbine*, 475 U.S. 412, 431 (1986) (citations omitted); *United States v. Craig*, 573 F.2d 455, 475 (7th Cir. 1977), *cert. denied*, 439 U.S. 820 (1978); *Jerricks v. Bresnahan*, 880 F. Supp. 521, 524 (N.D. Ill. 1995). Adversarial proceedings include formal charges, indictment, information, arraignment, and preliminary hearings. *Jerricks*, 880 F. Supp. at 525. In this case, Evans' claim of a Sixth Amendment violation alleges a station house detention and interrogation, which does not trigger a Sixth Amendment right to counsel. Plaintiff's attempt to "cure" this pleading deficiency by stating in his response brief that "Count IV should refer to the Fifth Amendment, not the Sixth" is unavailing. As a matter of law, Evans cannot state a claim for a violation of his Sixth Amendment right to counsel; therefore, Defendants' motion to dismiss Count IV is granted.

### c.        Failure to Intervene

Count IX alleges that Defendants failed to intervene to prevent violations of Evans'
constitutional rights. Defendant Police Officers argue that Evans' claim for failure to intervene is
untimely because it should have been brought within two years of his arrest in 1976. While a
claim for failure to intervene generally should be brought immediately because the injury is
compensable even in the face of a subsequent conviction, the *Heck* accrual rule ultimately
determines the claim's validity. *See Wiley v. City of Chicago*, 361 F.3d 994, 997 (7th Cir. 2004)
(citation omitted). Thus, this Court must determine whether success on Evans' claim would
necessarily imply the invalidity of his conviction. To do so, this Court must first determine what
conduct underlies the failure to intervene claim. Defendant Police Officers argue that the failure
to intervene claim is based on Evans' time-barred coerced confession claim and therefore should
be barred. *See Hobley v. Burge*, No. 03 C 3678, 2004 WL 2658075, at *6 (N.D. Ill. 2004)
("*Hobley II*").

Plaintiff responds that the failure to intervene claim relates to Defendants' failure to
prevent any of the alleged misconduct and constitutional violations, including falsifying police
reports, inducing prosecution and, ultimately, wrongful conviction. To the extent that this claim
is based on the series of constitutional violations occurring post-arrest and through Evans' trial
and post-conviction proceedings, its success will necessarily implicate the validity of the
underlying conviction. *Heck*, 512 U.S. at 486-87. Thus, it survives a motion to dismiss. *See U.S.
Gypsum*, 350 F.3d at 626. To the extent, however, that this claim relates to the time-barred
coerced confession claim, it is likewise time-barred. *See Hobley II*, 2004 WL 2658075, at *6.
This Court denies Defendants' motions to dismiss Count IX.

### d.    Section 1983 Due Process Claim

Count I asserts a violation of Evans' due process rights under the Fourteenth Amendment to the United States Constitution. Specifically, Evans claims that the Defendants "deliberately withheld exculpatory evidence, as well as fabricated false reports and other evidence, thereby misleading and misdirecting the [Plaintiff's state] criminal prosecution." (Pl.'s Am. Compl. ¶ 56). The Defendant Police Officers argue that these allegations support a claim of malicious prosecution but not one of violation of due process. Illinois law provides a cause of action for malicious prosecution, which Evans alleges in Count X. Relying on *McCann v. Mangialardi*, 337 F.3d 782 (7th Cir. 2003), Defendant Police Officers contend that Evans is barred from bringing a federal constitutional claim in the same regard. In addition, Defendant Police Officers assert that the rule of absolute testimonial immunity bars any claim of a violation of Plaintiff's right to a fair trial. *See Briscoe v. LaHue*, 460 U.S. 325, 326 (1983).

Plaintiff contends that his Count I is "an archetypical due process claim." Evans relies on *Brady v. Maryland*, 373 U.S. 83 (1963) and *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001) (*Newsome I*) for the proposition that § 1983 claims exist whenever a police officer withholds material exculpatory information, thereby denying the right to a fair trial. *Newsome I*, 256 F.3d at 749-53. In addition, Plaintiff asserts that the fabrication of false evidence to procure a conviction has always violated the Constitution. *See, e.g., Manning v. Miller*, 355 F.3d 1028, 1033 (7th Cir. 2004).

In *McCann*, the Seventh Circuit quoted *Newsome I*, stating "'the existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution." *McCann*, 337 F.3d at 786. But the Seventh Circuit in *Newsome I* stated that "[plaintiff] does have a due process

claim in the original sense of that phrase–he did not receive a fair trial if the prosecutors withheld material exculpatory details." *Newsome I*, 256 F.3d at 752 (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). In addition, "a prosecutor is responsible for learning of and disclosing all exculpatory evidence known to the police." *Id.* (citing *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995)). A claim along these lines is "a genuine constitutional tort." *Id.* (citing *Jones v. Chicago*, 856 F.2d 985 (7th Cir. 1998) and *Jean v. Collins*, 221 F.3d 656 (4th Cir. 2000)). Evans alleges that such a violation occurred in his case and he has plead sufficient facts to state a claim. Accrual of Evans' due process claim was postponed by the *Heck* rule until the exoneration and pardon.

Second, Defendant Police Officers argue that Evans' due process claim should be dismissed to the extent that Evans claims any of the Defendant Police Officers gave false testimony against him under the rule of absolute testimonial immunity. *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983). The United States Supreme Court held in *Briscoe* that law enforcement officials are absolutely immune against claims of false or perjured testimony even when that testimony allegedly deprived a party of his right to a fair trial. *Id.* An exception to the absolute immunity rule exists, however, for so-called complaining witnesses. *Cervantes v. Jones*, 188 F.3d 805, 809 (7th Cir. 1999), *overruled on other grounds by Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001). A "complaining witness" is defined as "one who actively instigated or encouraged the prosecution of the plaintiff." *Cervantes*, 188 F.3d at 809. In his due process claim, Evans avers that "[a]bsent [Defendant Police Officers'] misconduct, the prosecution of Plaintiff could not and would not have been pursued." (Pl.'s Am. Compl. ¶ 56). This Court finds that it is reasonable to infer from Evans' amended complaint that Defendants could be characterized as "complaining witnesses" and therefore disqualified from absolute immunity.

The determination of who is a complaining witness is a question of fact and thus, should not be resolved on a motion to dismiss. *Anthony v. Baker*, 955 F.2d 1395, 1399 (10th Cir. 1992). For these reasons, this Court denies the Defendant Police Officers' motion to dismiss Evans' count I.

### e.     Denial of Access to Courts

Count VIII avers that Defendants denied Plaintiff the right of access to courts by wrongfully suppressing and destroying information which deprived Plaintiff of constitutional claims against potential defendants. Access to courts claims fall into two categories. *Christopher v. Harbury*, 536 U.S. 403, 413 (2002). The first category includes "systemic official action" claims, in which official action prevents a plaintiff from preparing or filing a lawsuit at the present time. *Id*. In the second category are claims arising from official acts that allegedly have caused a plaintiff to lose or inadequately settle an otherwise meritorious case; to lose an opportunity to sue; or to lose an opportunity to seek a particular form of relief. *Id*. at 414.

Evans' access to courts claim falls into the second, or backward looking, category. The ultimate object of the second category of access to courts claims is not judgment in a future lawsuit but simply judgment in the access claim itself. *Harbury* at 414. *Harbury* specifies that in order to properly plead an access to courts claim, a plaintiff must show that he lost or was otherwise unable to maintain a specific legal remedy. When the claim is backward looking, like this one, the plaintiff must describe the underlying cause of action in the complaint and also "must identify a remedy that may be awarded as recompense but [is] not otherwise available in some suit that may yet be brought." *Id*. at 415.

In the instant case, Evans has failed to meet the requirements of *Harbury*. Specifically, he has not identified either the cause of action that Defendants' actions caused him to forfeit or the

specific remedy that would not be otherwise available to him. Without such allegations, he fails, as a matter of law, to state a claim upon which relief can be granted. For the reasons articulated in *Newsome*, this Court grants Defendants' motions to dismiss Count VIII.

## 2. Civil Rights Conspiracy Claims

Evans alleges three conspiracy claims. Count VI alleges a conspiracy claim under 42 U.S.C. § 1985(3); Count VII alleges a conspiracy claim under 42 U.S.C. § 1983; and Count XI alleges a conspiracy claim under state law. Defendants have moved to dismiss Counts VI and VII.

### a. § 1985(3) Conspiracy Claim

First, Defendants claim that the intra-corporate conspiracy doctrine bars Evans' Section conspiracy claims. The intra-corporate conspiracy doctrine holds that employees and managers of a corporation, who are jointly pursuing its lawful business, are not considered to be conspirators when acts that fall within the scope of their employment are said to be discriminatory or retaliatory. *Wright v. Ill. Dep't of Children & Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994); *see also Howard v. City of Chicago*, No. 03 C 8481, 2004 WL 2397281, at *11 (N.D. Ill. Oct. 25, 2004).

In *Wright*, the Seventh Circuit applied the doctrine to bar a § 1985(2) claim brought against the Illinois Department of Children and Family Services. The *Wright* court reasoned that "large bureaucratic agencies such as the DCFS are functionally the equivalent of corporations in that their employees and officials jointly endeavor to provide a product or service and reach decisions pursuant to a unified, hierarchical structure" and thus the intra-corporate conspiracy doctrine applied to individual members of the department. *Wright*, 40 F.3d at 1508. But the

Seventh Circuit noted that the doctrine's bar against § 1985 claims was not absolute, stating "[i]n sum, then, except in egregious circumstances, intra-entity discussions that result in discriminatory or retaliatory actions lie outside the scope of § 1985." *Id*. at 1508-1509.

The Seventh Circuit has recognized two exceptions to the intra-corporate conspiracy doctrine. One exception applies when plaintiff shows that the employees were motivated by personal bias. *Hartman v. Bd. of Tr. of Cmty. Coll. Dist. No. 508*, 4 F.3d 465, 470 (7th Cir. 1993) (discussing the applicability of the intra-corporate conspiracy doctrine to § 1985(3) claims). In such an instance, "the interests of the corporation would have played no part in the employees' collective action, so the action could not have been taken within the scope of employment." *Id.* The second exception applies when the conspiracy was "part of some broader discriminatory pattern" or when it "in any way permeated the ranks of the organization's employees." *Id*. at 470-71. Although the Seventh Circuit has not defined the "broader discriminatory pattern" exception, it has identified relevant factors to consider, including the number of agents involved, the number of acts involved, and the nature and scope of the conspiracy itself. *See, e.g., Boloun v. Williams*, No. 00 C 7584, 2002 WL 31426647, at *11-12 (N.D. Ill. Oct. 25, 2002); *Jefferson v. City of Harvey*, No. 98 C 5834, 2000 WL 15097, at *4-5 (N.D. Ill. Jan. 5, 2000). The amended complaint in this case alleges acts occurring over the course of an extended period of time, involving multiple individuals both in and outside the Chicago Police Department, and that, if true, amounted to a broad discriminatory pattern that permeated the ranks of the Defendants' employees. In addition, if the Defendant Police Officers conspired among themselves rather than following any departmental policy, it could reasonably be inferred that they did so for reasons of personal bias. If true, they acted outside the scope of their employment and the intra-corporate

conspiracy doctrine would not apply. For these reasons, it is inappropriate to dismiss Evans' § 1985(3) (Count VI) claim at this time.

**b.    § 1983 Conspiracy Claim**

The Seventh Circuit has not determined whether the intra-corporate conspiracy doctrine applies to § 1983 conspiracy claims. Indeed, there is a split between courts in this district on the applicability of the doctrine to such claims. *See, e.g., David v. Village of Oak Lawn*, No. 95 C 7368, 1996 WL 210072, at *4 (N.D. Ill. A[r. 29, 1996) (Gettleman, J.); *Chavez v. Ill. State Police*, No. 94 C 5307, 1996 WL 66136, at *7-8 (N.D. Ill. Feb. 13, 1996) (Manning, J.); *Northen v. City of Chicago*, No. 93 C 7013, 1999 WL 342441, at *4 (N.D. Ill. May 17, 1999) (Holderman, J.); *Cooper v. Harris*, Nos. 98 C 1623 & 98 C 1624, 1999 WL 261742, at *3 (N.D. Ill. Apr. 13, 1999) (Grady, J.); *Salto v. Mercado*, No. 96 C 7168, 1997 WL 222874, at *1 (N.D. Ill. Apr. 24, 1997) (Zagel, J.); *Howard v. City of Chicago*, No. 03 C 8481, 2004 WL 2397281, at *12 (N.D. Ill. Oct. 25, 2004) (Andersen, J.). Several judges have refused to apply the doctrine to cases involving allegations of police misconduct. *See Newsome v. James*, No. 96 C 7680, 2000 WL 528475, at *14 (N.D. Ill. Apr. 26, 2000) (Plunkett, J.) (citing cases). As noted in Judge Plunkett's decision in *Newsome*, the intra-corporate conspiracy doctrine was developed "to shield corporations and their employees from liability for routine, collaborative business decisions." *Newsome*, No. 96 C 7680, 2000 WL 528475, at *15. *Newsome* found that framing the plaintiff for murder did not qualify as routine police department decision-making. *Id.* Evans' § 1983 conspiracy claim likewise addresses conduct that is far removed from what was contemplated as a routine, collaborative business decision. For that reason, this Court denies Defendants' motions to dismiss Count VII.

**B.      City of Chicago's Motion to Strike Portions of Paragraph 17**

The City of Chicago has moved to strike certain portions of paragraph 17 of Evans'
amended complaint as duplicative, immaterial, and/or impertinent to Evans' claims. Paragraph
17 alleges that Defendant Police Officers coerced false and incriminating statements from
Plaintiff, Sam Parker, Keith Jones, Columbus Thomas, and Judith Januszewski through
"coercive and unconstitutional tactics." The Defendant City of Chicago argues that paragraph 17
fails to establish a causal connection between Defendants' alleged conduct and the resulting
injury; and that the allegations about coerced statements are immaterial to Evans' conspiracy
claims. Plaintiff avers that paragraph 17 demonstrates that Defendants' conduct was willful,
systematic, and supports his allegations of witness manipulation, an important part of his due
process claim.

This Court does not favor motions to strike unless it is clear that the matter at issue has
no bearing on the litigation. In this case, the allegations in paragraph 17 cannot be said to have
no bearing on the litigation and this Court accordingly declines to strike them.

**C.      City of Chicago's Motion to Clarify the *Monell* Claim**

The City of Chicago seeks to have this Court require Evans to amend his pleadings with
respect to his apparent *Monell* claim against the City. In its motion, the City notes that Plaintiff's
response to the City's motion to dismiss Plaintiff's original complaint appeared to clarify his
claim. In the interim, Magistrate Judge Schenkier issued an order denying the individual
Defendants' Rule 12(e) motion on the ground that "Plaintiff's allegations here are by no means
'skeletal.'" *Evans v. City of Chicago*, No. 04 C 3570 (N.D. Ill. Nov. 30, 2004) (order denying

motion to clarify). This Court agrees with the magistrate judge's reasoning, which it finds applicable to the amended complaint. For this reason, the City's motion to clarify is denied.

## Conclusion

For the foregoing reasons, Defendants' motions to dismiss are granted as to Counts III, IV, and VIII; and denied as to Counts I, VI, VII, and IX. Defendant City of Chicago's motion to strike and motion to clarify are denied.

Enter:

/s/ David H. Coar

_____
David H. Coar
United States District Judge

Dated: **August 29, 2005**