## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|                           |   |                            |
|---------------------------|---|----------------------------|
| MICHAEL EVANS,            | ) |                            |
|                           | ) |                            |
| Plaintiff,                | ) |                            |
|                           | ) | No. 04 C 3570              |
| vs.                       | ) |                            |
|                           | ) | District Judge Coar        |
| CITY OF CHICAGO, et al.   | ) |                            |
|                           | ) | Magistrate Judge Schenkier |
| Defendants.               | ) |                            |

### MEMORANDUM OPINION AND ORDER

In 1976, plaintiff Michael Evans, then seventeen years old, was charged with the kidnapping rape and murder of nine-year-old Lisa Cabassa. In April 1977, Mr. Evans was convicted of those offenses and sentenced to a term of imprisonment of 200 to 400 years. Mr. Evans remained imprisoned until May 23, 2003, when his sentence was vacated and he was released based on the results of DNA that was unavailable in the 1970s. Thereafter, on August 22, 2003, the Cook County State's Attorney's office dismissed all charges against Mr. Evans.

In this lawsuit, plaintiff alleges that the defendant police officers conspired to frame him for the Cabassa murder, for which he spent 26 years in prison. Plaintiff's fourteen-count complaint asserts nine claims under 42 U.S.C. § 1983 and/or 1985(3), as well as five supplemental claims under Illinois law. Plaintiff seeks recovery of "substantial damages" (*see* doc. # 14: Joint Status Report, 10/19/04, at 1).

Subsequent to the dismissal of charges against Mr. Evans and the filing of this lawsuit, on January 7, 2005, Illinois Governor Rod Blagojevich pardoned Mr. Evans (and three other individuals). In a statement accompanying the pardons, Governor Blagojevich stated: "[S]erving

time in prison – years in some cases – for a crime you didn't commit is one of the worst things that could happen to someone. . . . Thanks to DNA technology, these four men were exonerated. A pardon will help each of them rebuild their lives, and that's why I granted them" (Police Officer Defs.' Joint Mem., Ex. A). In commenting on this pardon, one of Mr. Evans's attorneys of record in this case, stated that "[t]his is the first official finding from a governmental authority that these men are actually innocent" (*Id.*). More recently, in a proceeding in this case in open court on July 28, 2005, counsel for Mr. Evans indicated his intent to attempt to offer the pardon at trial as evidence of Mr. Evans's innocence.[1]

The discovery dispute presently before the Court involves the attempt by the police officer defendants to obtain information utilized in the pardon decision. On December 30, 2004, the police officer defendants served a document subpoena on the Illinois Prisoner Review Board ("the PRB") seeking production, for the period January 1976 through the present, of "[a]ll documents regarding or relating to Evans, including but not limited to: complete inmate file, parole hearings (*e.g.*, transcripts and memoranda) and copies of correspondence sent to, or received by, Evans" (Police Officer Defs.' Mem. Regarding Time-Frame Surrounding Subpoenas, Ex. A). Sometime in April 2005, the PRB produced documents responsive to this subpoena; however, the PRB withheld from production its clemency petition files and recommendations that it had provided to Governor Blagojevich for his consideration in connection with Mr. Evans's pardon. When conversations between the police officer defendants' counsel and the PRB's counsel failed to resolve the dispute

---

[1]"Since at least 1977, Illinois has adhered to the view that 'two forms of pardon are presently used by the Governor of this state, one based on the innocence of the defendant and the other merely pardoning the defendant without reference to his innocence.'" *Walden v. City of Chicago*, No. 04 C 0047, 2005 WL 1126553, *8 (N.D. Ill. Apr. 25, 2005) (quoting *People v. Chiappa*, 368 N.E.2d 925, 926 (2d Dist. 1977)).

concerning production of these additional materials, the PRB filed its motion to quash the subpoena (doc. # 171).

After learning that certain materials had been withheld from the PRB's production, the police officer defendants served a subpoena on Governor Blagojevich on May 31, 2005, seeking production, for the period from January 1976 through and including the present, of "[a]ll documents regarding or relating to Evans, including but not limited to: the complete file and all materials created and/or reviewed by Governor Rod R. Blagojevich and/or any member of his staff and/or State of Illinois employee that in any way affected, influenced or enabled the Governor Rod R. Blagojevich's decision to issue a pardon to Evans on or about January 6, 2005" (doc. # 196: Police Officer Defs.' Mem. Regarding Time-Frame Surrounding Subpoenas, Ex. F). In or about June 2005, the Governor's office produced certain documents responsive to the subpoena, but withheld various others on assertions of privilege. Among the documents withheld from production were recommendations in connection with the pardons provided to Governor Blagojevich by Matthew S. Ryan, senior counsel to the Governor. After receiving documents from the Governor's office (and learning that some were withheld), on July 6, 2005 the police officer defendants served a deposition subpoena on Mr. Ryan (*Id.*, Ex. K). Service of that subpoena resulted in the second discovery motion pending now before the Court: a motion by Mr. Ryan to quash the subpoena for his testimony (doc. # 173). In the memorandum in support of the motion, Mr. Ryan makes clear that – on behalf of the Governor's office – he also seeks to quash the document subpoena insofar as it seeks documents that the Governor's office withheld on grounds of privilege.

The police officer defendants oppose both motions to quash. In addition, although they have not filed a written motion doing so, their responses to the two motions to quash make clear that they

also seek production of the documents that have been withheld from production by the PRB and the Governor's office. During a proceeding on July 28, 2005, the Court confirmed on the record that the police officer defendants sought production of these withheld materials, and further confirmed that the PRB and the Governor's office understood that that issue was also presented for consideration by the Court at this time. Therefore, we treat the police officer defendants' response to the motions to quash (doc. # 197) as a cross-motion to produce documents withheld for production by the PRB and the Governor.

In connection with the motions to quash, and the police officer defendants' motion to compel, the Court has received and reviewed the briefs of the parties to the motions; privilege logs from the Governor's office and the PRB; copies of the documents that have been withheld, for purposes of an *in camera* inspection; and copies of the documents that have been produced in response to the subpoenas. Upon consideration of these materials, the Court: (1) denies the motion to quash the subpoena for documents served on the Governor's office (doc. # 173), the police officer defendants' motion to compel production of documents by the Governor's office (doc. # 197); (2) denies the PRB's motion to quash the document subpoena (doc. # 171), and grants the police officer defendants' corresponding motion to compel production of withheld documents (doc. # 197); and (3) denies the motion to quash the testimonial subpoena for Mr. Ryan (doc. # 173). Our reasoning for these rulings is as follows.

## I.

In their motions to quash, the PRB and Mr. Ryan (collectively, "the Respondents") argue that neither the documents nor the testimony that the police officer defendants seek are relevant to plaintiff's claims in this case (Respondents' Joint Mem. 13-14). Federal Rule of Civil Procedure

4

26(b)(1) provides that any party, as a matter of right, may obtain discovery of nonprivileged material "that is relevant to the claim or defense of any party." In this case, Mr. Evans alleges that the police officer defendants engaged in a conspiracy to have him prosecuted and convicted for crimes he did not commit. The fundamental premise of this claim is that Mr. Evans is, in fact, innocent of those crimes for which he was convicted. In issuing the pardon, Governor Blagojevich stated that Mr. Evans had been "exonerated." And, Mr. Evans's counsel has stated that he will seek to offer the pardon into evidence at trial as proof of Mr. Evans's innocence.

We express no view on whether the trial judge will allow Mr. Evans to put his pardon into evidence, and if so, whether – or to what extent – the trial judge will permit the police officer defendants to offer evidence as to the basis for the pardon. However, given that there are no *in limine* rulings at this time barring the admission of that evidence, we cannot say that the information sought by the police officer defendants is outside the scope of "relevance" as defined in Rule 26, at least insofar as the police officer defendants seek documents and testimony to probe the basis for the pardon.[2] Accordingly, the Court overrules the Respondents' argument that none of the requested documents or testimony is relevant.

## II.

We now turn to the other objections raised by the Respondents to the document and testimonial subpoenas. All of those objections are premised on the assertion of one or more of the following privileges: (a) attorney-client privilege; (b) work product doctrine; and (c) deliberative process, or "official information," privilege. In addition, the PRB (but not the Governor's office)

---

[2]During proceedings in Court on July 28, 2005, counsel for the Respondents acknowledged this point, and agreed that in the absence of trial court rulings barring the admission of evidence concerning the pardon, the requested information would fall within the scope of relevant discovery.

5

asserts a privilege based on various statutes and administrative regulations concerning conduct of proceedings by the PRB. Because this case arises under the Court's federal question jurisdiction, all questions of privilege are governed by federal common law. *See Memorial Hosp. for McHenry County v. Shader*, 664 F.2d 1058, 1061 (7th Cir. 1981); Fed. R. Evid. 501. That is true even though plaintiff also asserts certain supplemental state law claims. *Memorial Hosp.* 664 F.2d at 1061 n. 3. We address each of the asserted privileges in turn.

## A.

The work-product doctrine "provides an exception to the otherwise liberal discovery rules." *Beneficial Franchise Co., v. Bank One, N.A.*, 205 F.R.D. 212, 215 (N.D. Ill. 2001). The doctrine applies to protect documents and tangible things "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) . . . ." Fed. R. Civ. P. 26(b)(3).

We are not convinced that documents created in connection with the pardon decision were "prepared in anticipation of litigation," so as to trigger the work-product doctrine. The Seventh Circuit has explained that the test for anticipation of litigation is "whether, in light of the nature of the document and the factual situation and the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Binks Mfg. Co. v. National Presto Indus. Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983). In contrast, "[m]aterials prepared in the ordinary course of a party's business, even if prepared at a time when litigation was reasonably anticipated, are not protected work-product." *Continental Cas. Co. v. Marsh*, No. 01 C 0160, 2004 WL 42364, *8 (N.D. Ill, Jan. 6, 2004). Here, we have been provided no evidence that the documents in question were generated with an eye toward litigation, and/or that the documents were anything

6

other than the type of documents normally generated in connection with consideration of a pardon. Indeed, it is hard for us to imagine that documents relating to the decision to pardon Mr. Evans were prepared "because of the prospect of litigation" involving the PRB or the Governor when Illinois law renders a pardon decision unreviewable. *People ex. rel. Madigan v. Snyder*, 804 N.E.2d 546, 560 (Ill. 2004); *People v. Watson*, 807 N.E.2d 628, 633 (Ill. App. 2004).

Moreover, even if the documents were prepared in anticipation of litigation involving the PRB or the Governor, the work-product doctrine would not apply here. The work-product doctrine "limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought." *Hernandez v. Longini*, No. 96 C 6203, 1997 WL 754041, *2 (N.D. Ill. Nov. 13, 1997) (quoting *In Re California Pub. Utils. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989)). In *Hernandez*, the court explained that this limitation recognizes that the considerations that underlie the work-product doctrine do not apply where information is sought from a non-party. In that case, the plaintiff sued the defendant under 42 U.S.C. § 1983 on claims of excessive force and false criminal charges, and on a state law claim for malicious prosecution. The defendant sought to obtain documents and testimony from the Will County State's Attorney's Office concerning criminal files relating to the plaintiff. The Will County State's Attorney's Office asserted, among other things, a work-product objection to producing those documents (and the testimony of one of its state's attorneys). The court rejected the work-product assertion, finding that "there are no overriding concerns to justify imposition of a work product privilege in this case." *Id.* at *2. The court reasoned that the "free rider" problem (that is, the problem of a less than diligent attorney getting the benefit of the work done by his more diligent adversary) is not present "where the prior case was criminal and the subsequent civil." *Id.* (quoting *Schultz v. Talley*, 152 F.R.D. 181, 185 (W.D. Mo.

1993). In addition, the Court found that since the underlying criminal case from which the material was sought was closed, "there are no concerns with jeopardizing an ongoing criminal investigation . . ." *Id.*

The Respondents seek to distinguish *Hernandez* on the ground that *Hernandez* involved an attempt to obtain discovery of criminal investigation files in a related civil lawsuit, whereas this case involves an effort to obtain information concerning a pardon that may be implicated in a related civil suit. We conclude that this factual distinction does not make a difference in the legal analysis that is applicable here. If anything, there is even a weaker case here for asserting work-product protection than there was in *Hernandez,* where information was sought concerning a prior criminal investigation. In the latter situation, there is at least a theoretical possibility that discovery into a prior criminal investigation could reveal the existence of conduct that could lead to civil liability in connection with that investigation. *James v. City of Indianapolis*, 216 F.R.D. 440, 450 (S.D. Ind. 2003) (Section 1983 case where civil discovery stayed because documents sought could lead to criminal indictments). By contrast, as the Respondents acknowledge (Resps.' Joint Mem. at 11), under Illinois law a governor's pardon decision is "essentially unreviewable." Thus, disclosure of information about a pardon decision could not subject the Governor or the PRB to liability.

For all of these reasons, the Court rejects the Respondents' work product objection.

**B.**

We next consider the Respondents' assertion that the withheld documents are protected by the attorney-client privilege. Under governing Seventh Circuit law, the attorney-client privilege applies:

8

> (1) where legal advice of any kind is sought (2) from a professional legal advisory in his capacity as such, (3) the communication relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983). *See also Radiant Burners, Inc. v. American Gas Ass'n*, 320 F.2d 314, 319 (7th Cir.), *cert. denied*, 375 U.S. 929 (1963). The party asserting the attorney-client privilege has the burden of establishing each of those elements on a document-by-document basis. *Lawless*, 709 F.2d at 487.

The attorney-client privilege serves the important policy of fostering "full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege does this by "encourag[ing] people who find themselves involved in actual or potential legal disputes to be candid with any lawyer they retain to advise them." *United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999). At the same time, the Seventh Circuit has recognized that this important benefit does not come without a serious cost: "when the privilege shelters important knowledge, accuracy declines. Litigants may use secrecy to cover up machinations, to get around the law instead of complying with it. Secrecy is useful to the extent it facilitates the candor necessary to obtain legal advice. The privilege extends no further." *In re Michael Felberg*, 862 F.2d 622, 627 (7th Cir. 1988). As a result, the Seventh Circuit has directed that the scope of the privilege must be "strictly confined within the narrowest possible limits." *Lawless*, 709 F.2d at 487 (quoting 8 WIGMORE, EVIDENCE § 2291 (McNaughton Rev. 1961)).

In line with these principles, courts within this jurisdiction have held that not all communications from a client to his attorney are privileged. Because the privilege "protects only

9

those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege," *In re Carl Walsh*, 623 F.2d 489, 494 (7th Cir. 1980), documents prepared for both legal and non-legal review are not privileged. *See, e.g., Frederick*, 182 F.3d at 500; *In Re Air Crash Disaster at Sioux City, Iowa*, 133 F.R.D. 515, 518 (N.D. Ill. 1990). Just as documents prepared for a business purpose are not privileged, *see e.g., In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000), documents concerning "advice on political, strategic or policy issues, valuable as it may have been, would not be shielded from disclosure by the attorney-client privilege." *In Re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998); *see also Republican Party of North Carolina v. Martin*, 136 F.R.D. 421, 426 (E.D. N.C. 1991) ("if the communication essentially involves the giving of political advice, then it is not privileged").

Nor are communications from the attorney to the client automatically privileged. Rather, those communications are privileged only:

> (1) if it is shown that the client had a reasonable expectation in the confidentiality of the statement; or, put in another way, if the statement reflects a client communication that was necessary to obtain informed legal advice (and) which might not have been made absent the privilege . . .; or (2) if the communications 'tend to directly or indirectly reveal a client confidence.'

*I.B.J. Whitehall Bank & Trust Co. v. Cory & Associates, Inc.*, No. 97 C 5827, 1999 WL 617842, *3 (N.D. Ill. Aug. 12, 1999) (internal citations omitted).

Finally, as the Seventh Circuit's formulation of the elements of the privilege in *Lawless* makes clear, the attorney-client privilege may be waived. For example, "the attorney-client privilege is generally waived when documents are disclosed to third parties." *I.B.J. Whitehall*, 1999 WL 617842, *3. *See also Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 477

(N.D. Ill. 2002). "Likewise, a client can waive the privilege by producing similar documents in response to a discovery request." *U.S. v. Seidman*, 368 F.Supp. 2d 858, 860 (N.D. Ill. 2005) (quoting *Christman v. Brauvin Realty Advisors, Inc.*, 185 F.R.D. 251,255 (N.D. Ill. 1999)). With these principles in mind, we consider below first the assertion of attorney-client privilege by the Governor, and then the assertion of attorney-client privilege by the PRB.

## 1.

The documents submitted *in camera* by the Governor's office can be classified into two main categories: e-mails and memoranda. We will begin review of the documents with the e-mails.

### a.

The e-mails reflect communications between Matt Ryan, Senior Counsel to the Governor and various members of the Governor's staff. For example, many of the e-mails are addressed from Mr. Ryan to Abbey Ottenhoff, Deputy Director of Communications (Bates Nos. 004743, 004761-63, 004799, 004811). These e-mails are also addressed to other staff members such as Cheryl Jackson, Deputy Chief of Staff, Communications (Bates Nos. 004761-63, 004767, 004799, 004811), and sometimes to Gerardo Cardenas, the Chicago Press Secretary and Hispanic Liaison (Bates No. 004811), as well as Rebecca Rausch, the Springfield Press Secretary (Bates Nos. 04799, 04811), and Jon Sabol, the Dunn Fellow (Bates No. 004767).[3] There is an e-mail logged from Mr. Bradley Tusk, the Deputy Governor, to Mr. Ryan (Bates Nos. 004800-01), as well as to various staff members: Ottenhoff, Cardenas, Jackson, Rausch and Tom Londrigan. Finally, there is an e-mail from Ms. Ottenhoff to Mr. Ryan (Bates Nos. 004809-10).

---

[3]The James H. Dunn Fellowship Program hires recent college graduates to work for a one-year term in various departments of the Governor's office, including the Governor's executive staff, Bureau of the Budget, and Legislative Office.

11

These e-mails are not be protected by the attorney-client privilege. As a threshold matter, the Court finds that the Governor's office has waived the privilege with respect to certain portions of the withheld documents by producing identical documents in response to the subpoena. It is well-established that production of documents to third-parties outside the privilege waives the assertion of the attorney/client privilege to them. *See, e.g., Eagle Compressors, Inc. v. HEC Liquidating Corp.,* 206 F.R.D. 474, 477 (N.D. Ill. 2002) ("The client is the holder of the attorney-client privilege and once a client discloses confidences to a third-party, the privilege is deemed waived"); *United States v. BD Seidman, LLP,* 368 F. Supp.2d 858, 860 (N.D. Ill. 2005) (same).

The withheld documents for which the Governor's office asserts an attorney/client privilege are in many respects identical to the documents labeled "already produced," which also have been submitted *in camera*:

| Withheld Documents | Produced Documents |
|---|---|
| • 004761-63 (news article) | • 004740, 004749-50, 004751, 004754, 004759 |
| • 004767 (original e-mail) | • 004775 |
| • 004743, 004800, 004801, 004811 ("background" request) | • 004748, 004742, 004747, 004772 |
| • 004799 (e-mail questions) | • 004770,004771, 004778 |

To the extent the withheld e-mails are the same as those that already have been produced, any claim of attorney/client privilege has been waived. Thus, we turn our attention on the withheld e-mails (or portions of them) that have not already been produced.

Bates No. 4743 contains two e-mails: (1) an e-mail from Ms. Ottenhoff to Mr. Ryan and Mr. Londrigan (with copies to Ms. Jackson and Ms. Rausch), and (2) an e-mail from Mr. Ryan to Ms. Ottenhoff (with copies to Jackson, Cardenas, Rausch and Londrigan), that responds to an e-mail

12

inquiry by Ms. Ottenhoff. The inquiry by Ms. Ottenhoff has already been produced (*see* Bates No. 4772). Assuming that Ms. Ottenhoff could be considered the "client," a question we need not address, we find that neither her inquiry or Mr. Ryan's response to it reflects either client confidences or a request for legal advice. Mr. Ryan's response, therefore, did not reflect a client communication necessary to obtain informed legal advice or reveal a client confidence. Accordingly, Mr. Ryan's response to Ms. Ottenhoff's inquiry, which is set forth at the top of Bates No. 4743, is not privileged. Moreover, any arguable privilege in that communication was waived by the production of the inquiry by Ms. Ottenhoff, to which Mr. Ryan was responding. The same holds for Bates No. 4811, which contains the same e-mail inquiry by Ms. Ottenhoff and response by Mr. Ryan.

Bates No. 4800 contains the same e-mail inquiry by Ms. Ottenhoff and response by Mr. Ryan discussed above. It also contains: (1) an e-mail from Ms. Ottenhoff to Mr. Ryan and Mr. Tusk (with copies to Jackson, Cardenas, Rausch and Londrigan) containing a question posed by Ms. Ottenhoff in light of Mr. Ryan's response, and (2) Mr. Ryan's e-mail to Ms. Ottenhoff (and others) answering that question. The additional question by Ms. Ottenhoff and response by Mr. Ryan did not involve confidential client communications made for the purpose of obtaining legal advice. Our review of those e-mails persuades us that the subject on which Ms. Ottenhoff sought Mr. Ryan's input was political, and not legal – and Mr. Ryan's political advice is not protected by an attorney-client privilege. *In re Lindsey*, 148 F.3d at 1106. Bates No. 4800 is not protected by the attorney/client privilege. The same holds for Bates No. 4801, which contains three of the same four e-mails that appear on Bates No. 4800.

Bates Nos. 4761-63 contain three e-mails: (1) an e-mail from Mr. Sabol to Ms. Jackson (with a copy to Ms. Ottenhoff), which attached a copy of a CHICAGO TRIBUNE column; (2) an e-mail from

13

Ms. Ottenhoff to Mr. Ryan (with a copy to Ms. Jackson) asking "how do you guys notify the attorneys/defendants" if there is a pardon; and (3) an e-mail from Mr. Ryan to Ms. Ottenhoff (with a copy to Ms. Jackson) responding to Ms. Ottenhoff's question. The first two of the e-mails described above have been previously produced (*see* Bates Nos. 4759-50 and 4759), and thus any purported privilege in those e-mails has been waived. Mr. Ryan's response to Ms. Ottenhoff's e-mail does not disclose client confidences, and it is not a response to a request for legal advice. Accordingly, Bates Nos. 4761-63 is not protected by the attorney/client privilege.

Bates No. 4767 contains two e-mails: (1) an e-mail from Ms. Jackson to Mr. Ryan (with a copy to Mr. Sabol), relating a question from a local newspaper concerning an estimate for the amount of restitution for which each of the pardoned individuals would be eligible; and (2) an e-mail from Mr. Ryan to Ms. Jackson (with a copy to Mr. Sabol) responding to that inquiry. The first e-mail, from Ms. Jackson to Mr. Ryan, has already been produced (Bates No. 4775), thus waiving any claim of privilege in that e-mail. Mr. Ryan's response does not reveal any client confidence that sought legal advice. Bates No. 4767 is not protected by the attorney/client privilege.

Bates No. 4799 contains two e-mails: (1) an e-mail from Ms. Ottenhoff to Mr. Ryan and Ms. Jackson (with a copy to Ms. Rausch), asking Mr. Ryan for (a) the names of attorneys who represented Mr. Evans and the other individuals who were pardoned, (b) whether the pardons would enable these individuals to file for restitution with court of claims, (c) why the pardons were being issued on that date, and (d) how many pardons the Governor had granted to date, and whether any were pardons of murder convictions; and (2) an e-mail from Mr. Ryan to Ms. Ottenhoff (with copies to Ms. Jackson and Ms. Rausch) in response to that inquiry. The first e-mail, in which Ms. Ottenhoff posed her questions, has been previously produced (Bates No. 4770), and thus any claim of privilege

14

in that document has been waived. Moreover, both the substance of Mr. Ryan's response and the subject line on his e-mail ("Sun Times on pardons"), as well as the subject of Ms. Ottenhoff's inquiry, makes it clear that Mr. Ryan was not asked for and did not provide legal advice. Rather, he was asked for and was provided advice about how to present the pardon decisions to the media. Political or public relations advice does not become privileged simply because it is given by an attorney. Bates No. 4789 is not protected in the attorney/client privilege.

Finally, Bates Nos. 4809-10 is an e-mail from Ms. Ottenhoff to Mr. Ryan, attaching a draft of information to be provided "for background purposes" concerning Mr. Evans and the other individuals who were pardoned, along with a response by Mr. Ryan (Bates No. 4809-10). Mr. Ryan's response includes various changes to Mr. Ottenhoff's draft. Upon review of these e-mails, we conclude that Ms. Ottenhoff was not seeking legal advice in providing the draft to Mr. Ryan, and that Mr. Ryan's changes do not reflect client confidences or convey legal (as opposed to political or public relations) advice. Accordingly, Document No. 4809-10 is not protected by the attorney/client privilege.[4]

### b.

There are several memoranda for which the Governor's office has asserted privilege: (1) a December 30, 2004 memorandum from Mr. Ryan to Mr. Tusk regarding recommendations on clemency petitions for Mr. Evans and two other individuals (Bates Nos. 4818-4819); (2) a January 4, 2005 memorandum from Mr. Ryan to Mr. Tusk containing recommendations on clemency petitions for Mr. Evans and three other individuals (Bates Nos. 4744-46), which is identical to the

---

[4]The revised version of the information "for background purposes" has been produced (*see* Bates Nos. 4776-77).

December 30, 2004 memorandum except for the addition of another individual included in the recommendations; and (3) a document that appears to be a duplicate of that January 4, 2005 memorandum (Bates Nos. 4812-14). These memoranda all relate background information concerning Mr. Evans's situation and those of the others who were pardoned; the PRB recommendation, as well as Mr. Ryan's own recommendation; and a discussion by Mr. Ryan of his meeting with counsel for individuals seeking pardons, and ways to present the pardons to the public if granted.

As we have explained above, communications from an attorney to a client are privileged only if they reflect client communications "necessary to obtain and form legal advice (and) which might not have been made absent the privilege," or "'tend to directly or indirectly reveal a client confidence'" *IBJ Whitehall*, 1999 WL 617842, *3. We seen nothing in these memoranda that reveals client communications or confidences. Moreover, the information concerning Mr. Evans and the other person seeking pardons is largely factual background information, not legal analysis of the information. The PRB recommendations that Mr. Ryan related are not subject to an attorney-client privilege between Mr. Ryan and Mr. Tusk (or others in the Governor's office) – and, as we explain below, are not privileged even within the PRB.

Mr. Ryan's recommendation concerning the pardons simply provides a conclusion, without any analysis of the reason for his recommendations. Documents prepared for both legal and non-legal purposes are not privileged. *Frederick*, 182 F.3d at 500. Elsewhere in the memoranda, Mr. Ryan discussed various public relations issues relating to any pardons, thus reinforcing the point that Mr. Ryan acts not only as a legal advisor but also as a political advisor. We therefore cannot conclude that he was giving legal advice in making his recommendations.

16

Accordingly, we conclude that Bates Nos. 4818-19, 4744-46 and 4812-14 are not protected by the attorney/client privilege.

## 2.

The PRB withholds only one document based on attorney/client privilege: a memorandum dated December 3, 2004, entitled "Recommendation" regarding executive clemency for Mr. Evans (Bates No. 334-36). The memorandum is signed by the Chairman of the PRB, recites public facts such as Mr. Evans's conviction, the offense charged, the sentences on each charge, a description of the offenses, some other background information, and the PRB's recommendations on the clemency petition, including the names of the voting members and how they voted. There is no indication in the briefs or on the face of this document that an attorney participated in the creation of this document, or why the information contained in it reflects a confidence shared with an attorney for the purpose of obtaining legal advice. Thus, we find that this Recommendation (Bates Nos. 334-36) is not protected by the attorney/client privilege.

## C.

We now turn to the Respondents' assertion of the "official information privilege."[5] The "official information privilege" is also known and referred to at common law as the "deliberative process privilege" and/or "executive privilege." *See K.L. v. Edgar,* 964 F. Supp. 1206, 1208 (N.D.

---

[5]We are mindful that in *People ex. rel. Burkett v. Chicago of Chicago,* 705 N.E.2d 48 (Ill. 1998), the Illinois Supreme Court refused to recognize a "deliberative process" or "official information" privilege under Illinois state law. However, as we explained above, the Seventh Circuit has held that federal common law (not state law) governs questions of privilege in a federal question case – even when that federal question case contains supplemental state law claims. *Memorial Hospital,* 664 F.2d at 1061 n. 3. While the *Memorial Hospital* court recognized that "[a] strong policy of comity between state and federal sovereignties compels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy,"*Id.* (omitting citations), we do not believe that the principle permits – much less requires – federal courts to ignore federal common law privileges merely because they have not been recognized in state law.

Ill. 1997) (executive privilege); *Landry v. Fed'l Dep. Ins. Corp.*, 204 F.3d 1125 (D.C. Cir. 2000) (deliberative process privilege). Under any of these labels, the privilege is the same: it "protects communications that are part of the decision-making process of a governmental agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-52 (1975)). The deliberative process privilege covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of the process by which governmental decisions and policies are formulated." *Dept. of Interior v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 9 (2001). For this privilege to apply, the document must be "pre-decisional" and "deliberative." *Becker v. IRS*, 34 F.3d 398, 403 (7th Cir. 1994). The theory behind the privilege is that "[s]ince frank discussion of legal and policy matters is essential to the decision making process of a governmental agency, communications made prior to and as a part of an agency determination are protected from disclosure." *Id.* Concomitantly, "[c]ommunications made subsequent to an agency decision are . . . not . . . protected." *Id.*

To determine whether a deliberative process privilege exists and should be applied to prevent discovery of otherwise relevant information, the following two-part analysis has been developed by the federal courts.

> First, the court must decide whether the government has shown that the privilege applies to the documents the government seeks to protect. Then, if the government meets its threshold burden of showing that the privilege applies, the litigant has the burden of showing that it has a particularized need for the documents.

*Ferrell v. U. S. Dept. of Housing and Urban Development*, 177 F.R.D. 425, 428 (N.D. Ill. 1998) (internal quotations and citations omitted).

The threshold showing of whether the privilege applies to the documents and/or other information the Government wishes to withhold from disclosure depends on a number of factors. For the Government to satisfy its *prima facie* showing,

> three things must happen: (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents.

*Ferrell,* 177 F.R.D. at 428 (quoting *K.L., L.F., & R.B. v. Edgar,* 964 F. Supp. 1206, 1209 (N.D. Ill. 1997). This requirement originated with the Supreme Court's holding in *United States v. Reynolds,* 345 U.S. 1 (1953), where the Court stated, with respect to the "executive privilege": "There must be formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Id.* at 532. Since then, case law has developed that has refined the threshold showing to the one stated above, in *Ferrell. See, e.g., Landry v. Fed'l Deposit Ins. Corp.,* 204 F.3d 1125, 1135 (D.C. Cir. 2000)(citing cases).

If the threshold showing is satisfied, then the party seeking the documents has the burden of showing a "particularized need" for the documents. *Farley,* 11 F.3d at 1389; *Ferrell,* 177 F.R.D. at 429. "In undertaking such an analysis, the court balances the plaintiff's need for disclosure against the government's need for secrecy, considering such factors as:

> (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose as the documents sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which disclosure of the documents sought would tend to chill future deliberations within government agencies, that is would hinder frank and independent discussion about governmental polices and decisions."

*Ferrell,* 177 F.R.D. at 429 (quoting *Farley,* 11 F.3d at 1389).

Applying these principles to the documents at issue results in the following findings. We will begin with the assertion of the deliberative process privilege by the Governor's office, and then move to the claims of deliberative process privilege made by the PRB.

**1.**

The Governor's office privilege log does not assert a deliberative process privilege. It is only in Mr. Ryan's joint memorandum with the PRB in support of the motion to quash that he asserts its applicability to the documents submitted *in camera* (Joint Mem. at 6). The Court will not find a waiver of the privilege based on lack of identification in the privilege log. But, we do find that the Governor's office's has failed to make a *prima facie* showing of privilege. The Governor's office has failed to submit an affidavit by a person in control of the documents and with personal knowledge regarding the reasons for assertion of the privilege. The Governor's office has failed to provide any "precise and certain reasons" for the assertion of the deliberative process privilege. In the absence of such information, the Governor's office has failed to satisfy the threshold showing necessary to make a *prima facie* showing of a deliberative process privilege. *See Ferrell,* 177 F.R.D. at 428.

However, assuming that a deliberative process privilege has been validly raised with respect to the documents withheld (although we would have no way of knowing precisely the documents for which it is asserted, since the privilege was not asserted on the log or by affidavit, as required), the police officer defendants have met their burden of showing that there is a particularized need for the documents in question that outweighs any claim of privilege. The documents concerning the pardon decision are relevant to the litigation, for the reasons we have discussed above (*see* pp. 11-17, *supra*). We think it overstates the case to claim, as do the police officer defendants, that the

20

failure to obtain the withheld documents will leave them "without any ability to rebut the inference that will be created [by] . . . introduction of the actual innocence pardon document into evidence" (Police Officer Defs' Mem. at 2). Yet, certainly the best evidence of the weight that should be accorded to the pardon, as proof of Mr. Evans's actual innocence, is the information and analysis on which it was based. And, that particular type of information is not available from other sources. Thus, both the relevance of the documents and the unavailability of the precise information in question from other sources weighs in favor of a finding of particularized need.

The role of the Governor's office in this litigation weighs against the finding of particularized need. The Governor's office is not a party to this lawsuit, and its conduct does not bear on the question of whether the police officer defendants knowingly sought to procure the prosecution and conviction of an individual whom they knew to be innocent. However, the remaining factors in the analysis weigh in favor of a finding of particularized need.

The seriousness of this litigation, and the issues involved in it, are obvious. A claim that police officers violated their sworn duty by knowingly seeking the prosecution and conviction of a person whom they knew to be innocent (and did so through multiple constitutional violations) strikes at the heart of the integrity of our criminal justice system. It is among the most serious charges that can be leveled against law enforcement. Finally, due to the unique context in which discovery concerning this particular pardon decision arises, we do not believe the disclosure sought here would hinder future pardon decisions. The Governor's office argues that because the decision of whether to grant clemency is a "controversial" and "serious" matter, the discovery sought here would be "an intrusion" into the pardon deliberations (Joint Mem. at 10). While we agree that every pardon or clemency decision is a serious matter, we do not believe that every pardon or clemency decision is

21

a controversial one. Most pardon decisions are never the subject of, or relevant to, any litigation: a governor's decision to issue a pardon (or to decline one) is not judicially reviewable, *People ex rel. Madigan v. Snyder*, 804 N.E.2d 546, 595 (Ill. 2004); *People v. Watson*, 807 N.E.2d 628, 633 (Ill. 2004), and it is the rare case where, as here, a pardon decision is potentially relevant to issues raised in a civil lawsuit.

Our decision today should not be read as an endorsement of the routine or widespread dissemination of materials underlying any and all pardon decisions. That said, we find that in the particular circumstances of this case the police officer defendants have established a particularized need for production of materials the Governor's office seeks to withhold on the basis of deliberative process privilege. Accordingly, the Court denies the assertion of the deliberative process privilege by the Governor's office.[6]

### 2.

We now turn to the PRB's assertion of the deliberative process privilege. The PRB argues that it is entitled to a deliberative process privilege on the following those documents: (1) a recommendation by Mr. Ryan to Mr. Tusk regarding clemency petitions that included Mr. Evans's petition (Bates Nos. 334-36); (2) an official document from the Bernard Carey State's Attorney's Office, dated July 13, 1997, which reveals the complaining witness (Bates No. 337); and (3) a Parole Hearing Notification Roster, which also reveals the complaining witness (Bates No. 338).

---

[6]We also note that even absent a showing a particularized need, a number of the documents withheld by the Governor's office would not be subject to the deliberative process privilege because they do not relate to recommendations or deliberations leading to the pardon decisions, but rather, relate to discussions concerning public dissemination of the pardon decisions (*see* Bates Nos. 4743, 4761-63, 4767, 4799-4801, 4809-11).

The deliberative privilege does not attach to any of these documents. At the outset, we must address the PRB's failure to file a timely or adequate affidavit that complies with the *Reynolds* and *Ferrell* rule. Neither the PRB's motion to quash, filed on July 11, 2005, nor its memorandum in support of the motion, filed July 15, 2005, included any affidavit that sought to establish a *prima facie* case of deliberative process privilege. The PRB belatedly submitted an affidavit (without leave of Court) on August 8, 2005 by Kenneth Tupy which states only that Mr. Tupy is legal counsel employed by the PRB, and that he has reviewed the privilege log and certifies that it is "true and correct." Mr. Tupy's conclusory affidavit does not even begin to satisfy the threshold showing required by *Ferrell* and other cases for the assertion of a federal common law deliberative privilege.

*First*, the affidavit must be made by someone with personal knowledge of the documents to which the privilege attaches, who can give reasons for the assertion of the privilege. In *Resident Adv. Bd. v. Rizzo*, 97 F.R.D. 749 (D.C. Pa. 1983), the court stated that this requirement, derived from the Supreme Court in *Reynolds*, that "actual personal consideration" be given by the "head of the department" to the information withheld on the claim of privilege, 345 U.S. at 8, could not be satisfied when a litigation attorney for the government asserts the privilege. *Id.* (citing cases). Mr. Tupy's affidavit fails to disclose his role as legal counsel, and fails to show that he has control over the documents or that he gave "personal consideration to the problem." *Ferrell*, 177 F.R.D. at 428. Indeed, he state only that he reviewed the log, and not the documents themselves.

*Second*, the threshold showing requires "the responsible official" to "demonstrate . . . precise and certain reasons for preserving the confidentiality of the documents in question," and to identify and describe the documents. *Ferrell*, 177 F.R.D. at 428. While the latter requirement can be satisfied by a privilege log, the former requirement cannot. It requires the affiant to do more than say that the

23

privilege log is "true and correct." It requires an explanation of why the government believes there is a deliberative privilege with respect to a particular document, and it requires the responsible official to specifically point out the information that is confidential within that document. Mr. Tupy's affidavit is wholly inadequate to this task.

In addition, a review of the documents persuades the Court that, even had a proper affidavit been filed, the PRB could not establish a *prima facie* showing of the deliberative process privilege. Two of the documents at issue (Bate Nos. 337 and 338) contain purely factual information that is nearly 30 years old, and that does not reveal deliberations by government agency personnel regarding confidential decisions. *See, e.g., EPA v. Mink,* 410 U.S. 73, 87-88 (1973) (the deliberative process privilege does not apply to purely factual communications).

Likewise, the Recommendation memorandum (Bates Nos. 334-336) contains only factual information considered by the PRB, and the final PRB decision. It does not contain deliberations or thoughts by any PRB members. Thus, the Recommendation reflects a post-decision proclamation of what the decision was, and what it was based on. The case law is clear that post-decision information is not protected by the deliberative process privilege. *U.S. v. Bd. of Educ. of City of Chicago,* 610 F.Supp. 695, 698 (N.D. Ill. 1985).

Because the PRB has failed to make a *prima facie* showing of privilege, we need not consider the question of particularized need as to these PRB documents. We reject the PRB's assertion of the deliberative decision privilege.

### D.

The PRB's log asserts several other bases for withholding the documents at issue. The assertions are: (1) relevance; (2) citation to a statute, as 730 ILCS 5/3-3-13 (West 2005); and (3)

24

citation to two administrative provisions, 20 Ill. Adm. Code 1610.30 and 20 Ill. Adm. Code 1610.180. We have several observations regarding these assertions.

*First*, none of these assertions are based on an cognizable privilege under federal law. Here, federal common law supplies the rules for any privileges asserted because this is a federal question case. *Northwestern Memorial Hosp.*, 362 F.3d at 925. The PRB's assertions of Illinois statutory law as the basis for an assertion of privilege are unavailing.

*Second*, even if Illinois statutory law applied here, the provisions in the cited texts do not say that the information at issue is subject to a "privilege." 730 ILCS 5/3-3-13(c) states: "The Board shall, . . . give a hearing to each application, . . . after which it shall confidentially advise the Governor by a written report of its recommendations which shall be determined by majority vote." Similarly, 20 Ill. Adm. Code 1610.180(h) states: that the PRB is required to "determine by majority vote in conference what its recommendation is on each petition and shall advise the Governor by a written report without publicity." 20 Ill. Adm. Code §1610.30(b)(1)(A) states: "The inmate shall have access to all evidence considered by the Board unless the evidence is specifically found to: Include information which, if disclosed, would damage the therapeutic relationship between the inmate and a mental health professional," and Section 1610.30(b)(1)(B) states: "The inmate shall have access to all evidence considered by the Board unless the evidence is specifically found to: Subject any person to the actual risk of physical harm."

The term "confidential" is used in 730 ILCS 5/3-3-13(c) and "without publicity"is used in 20 Ill. Adm. Code 160.180. However, those terms are not necessarily co-extensive with the term "privilege." The PRB has not cited any case law indicating that the terms "confidential" or "without publicity," as used in the statute and administrative code provision, reach the level of a privilege; nor

25

has the PRB defined the scope of such a privilege (such as, whether it is an absolute or qualified privilege, and if the latter, what evidence is sufficient to defeat it). In the absence of any Illinois authority on this issue, we decline to reach out and infer such a privilege. At most, these provisions have created an obligation of confidentiality in the PRB -- an obligation that is not at odds with relevant production requests in discovery, so long as a protective order is in place, as it is here.

As for the PRB's assertion of privilege based on Section 1610.30, we have even more difficulty understanding how the cited language could create a privilege claim in the PRB. Section 1610.30(b)(1)(A) plainly is intended to protect an inmate (someone in Mr. Evans's previous position) and any counseling relationship he may have; but here, Mr. Evans asserts no need to be protected from disclosure, and we see none. Section 1610.30(6)(1)(B) is designed to prevent disclosure that might subject a person to risk of physical harm; but here, no evidence is submitted to indicate any such risk. Section 1610.30 creates no privilege and provides no basis for the PRB to withhold the documents in issue.

*Third*, while the PRB log asserts a "relevancy" privilege with respect to three documents (Bates Nos. 334-36 and 337-38), such a privilege does not exist under state or federal law. Relevancy is an objection to production, but it is not a privilege. In any event, we reject the relevance objection. The document labeled with Bates Nos. 334-36, which is a recommendation from the PRB regarding Mr. Evans's petition for clemency, is relevant for the reasons set forth above (*see* pp. 17, *supra*). The relevancy of the documents labeled with Bates Nos. 337-38 is less apparent. Those two documents are from 1977, and recite factual information related to Mr. Evans's trial and conviction. Nonetheless, because there is no evidence offered by the PRB regarding which of the documents being withheld were considered – or not considered – in the course of the PRB making

26

its recommendation, we have no basis on which to find that these documents were not relevant to the decision the PRB made with respect to Mr. Evans. We find that the asserted relevance objection fails.

## III.

Finally, we address the motion to quash the deposition subpoena for Mr. Ryan. As Mr. Ryan recognizes in his memorandum (Resps.' Joint Mem. at 5), generally a subpoenaed witness who claims that his testimony would breach a privilege still must attend a deposition to assert the privilege in response to specific questions. *Hunt Int'l Resources Corp. v. Binstein*, 98 F.R.D. 689, 690 (N.D. Ill. 1983). That is consistent with the proposition that the proponent of the privilege must establish the privilege on a document-by-document (or question-by-question) basis.

There are cases that relieve an attorney of the need to respond to a testimonial subpoena, but only where it is clear that all of the testimony sought would fall within a privilege. *See, e.g., In Re: Subpoenaed Grand Jury Witness*, 171 F.3d 511 (7th Cir. 1999), *United States v. Lytle*, No. 87 CR 135, 1987 WL 20134 (N.D. Ill. Nov. 16, 1987). However, that exception does not apply here. The Governor's office and the PRB have produced certain documents in response to the subpoena (and, based on our opinion today, they will produce others). We cannot say that Mr. Ryan would be unable to give any testimony – "the process taken by Mr. Ryan and the Governor's staff to determine what evidence they uncovered that led them to make a recommendation regarding Mr. Evans's clemency petition" (Police Officer Defs.' Mem. at 12) – that would fall outside of an applicable privilege. We therefore deny the motion to quash the Ryan deposition subpoena.

## CONCLUSION

For the reasons set forth above, the PRB's motion to quash (doc. # 171) is denied; the police officer defendants' motions to compel production of documents withheld by the PRB and the Governor's office (doc. # 197) is granted; and the motion to quash the deposition subpoena for Mr. Ryan (doc. # 173) is denied. The documents that must be produced pursuant to this order shall be produced by September 1, 2005. The deposition of Mr. Ryan shall take place by September 15, 2005.

**ENTER:**

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**Dated: August 25, 2005**